# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 534 | **DATE** | 3/9/2004 |
| **CASE TITLE** | Simpson vs. Rowan, et al. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motions to dismiss of the Glenwood defendants [81-1], State's Attorney defendants [85-1], and Riverdale defendants [83-1] are granted. Case dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | **Document Number** |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 11 2004 date docketed | |
| | Docketing to mail notices. | | | |
| X | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 94 |
| | Copy to judge/magistrate judge. | | 3/9/2004 date mailed notice | |
| MD | courtroom deputy's initials | 2004 MAR -9 PM 5: 11 | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

**DOCKETED**

MAR 1 0 2004

| | | |
|---|---|---|
| ROBERT SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93 C 0534 |
| | ) | Judge Joan H. Lefkow |
| TOM ROWAN, ALEXANDER DIMARE, | ) | |
| SGT. DICARLO, MARY D. MALLO, KEN | ) | |
| GOFF, MIKE BAUMEL, D. SCHILLING, | ) | |
| JOYCE THILLMAN, MARK ALVARADO, | ) | |
| RICH SOMMER, MARTIN O'CONNELL, | ) | |
| and PETE SATRIANO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Simpson ("Simpson"), brings this action pursuant to 42 U.S.C. § 1983

against Alexander DiMare and Sgt. DiCarlo ("Glenwood defendants"); Mary D. Mallo, Ken Goff

and Mike Baumel ("State's Attorney defendants"); D. Shilling, Joyce Thillman, Mark Alvarado,

Rich Sommer, Martin O'Connell and Pete Satriano ("Riverdale defendants"). Simpson alleges in

Count I that all of the defendants violated his Fourth Amendment rights by conducting or

authorizing an illegal search of his home and seizure of his property. In Count II, Simpson

alleges that the three groups of defendants, acting under color of state law, violated his

Fourteenth Amendment rights by conducting or authorizing an improper, warrantless arrest. In

Count III, Simpson alleges that all of the defendants conspired to deprive him of his liberty

without due process of law and to violate his right to be free from unreasonable searches and

seizures. Before the court are motions by the Glenwood defendants, State's Attorney defendants,

94

and Riverdale defendants to dismiss Simpson's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants the motions.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS OF THE COMPLAINT[1]

According to Simpson's Amended Complaint, which is taken as true for the purposes of this motion, on May 20, 1992, a robbery and fatal shooting took place in a grocery store located in Glenwood, Illinois. After discovering fingerprints in the store, police arrested Carolyn LaGrone ("LaGrone"). LaGrone gave statements to the Glenwood and State's Attorney

---

[1]This case was originally filed on January 27, 1993 and was assigned to the Honorable Charles P. Kocoras. On August 11, 1993, Judge Kocoras dismissed this action on abstention grounds based on *Younger* v. *Harris*, 401 U.S. 37 (1971), because Simpson's criminal proceedings were pending in state court. On appeal, the Seventh Circuit vacated and remanded, ruling that Simpson's claims should not have been dismissed but should have been stayed until the conclusion of his state court proceedings. *See Simpson* v. *Rowan*, 73 F.3d 134, 139 (7th Cir 1995). Judge Kocoras stayed the proceedings, and the case was transferred to the undersigned in 2000. On May 5, 2003, this court granted Simpson's motion to lift the stay.

defendants that implicated herself, Simpson, and Lurlarn Young ("Young") in the robbery and shooting. Young was arrested and gave a statement to the Glenwood and State's Attorney defendants that implicated Simpson. She also authorized the police to conduct a search of the apartment and storage locker she shared with Simpson.

On May 25, 1992, members of an Emergency Response Team, acting without a warrant and in concert with or under the direction of the Riverdale defendants, forcibly entered Simpson's home. Sgt. DiCarlo and another Glenwood officer took Simpson into custody. After leaving Simpson's home, the defendants searched Simpson's storage locker and seized items they found in closed plastic bags.

## DISCUSSION

In support of their motion to dismiss, the Glenwood defendants argue that (1) collateral estoppel bars Simpson from bringing Counts I and II, which if dismissed would also bar Count III; and (2) under *Heck* v. *Humphrey*, 512 U.S. 477 (1994), Simpson's Complaint should be dismissed. The State's Attorney defendants argue that (1) collateral estoppel bars Simpson from bringing all Counts; (2) the Amended Complaint fails to allege sufficient facts to plead conspiracy; (3) the Amended Complaint fails to allege that the State's Attorney defendants violated Simpson's constitutional rights; and (4) the entire suit is barred by the *Rooker-Feldman* doctrine. In support of their motion, the Riverdale defendants argue that (1) Counts I and II are barred by collateral estoppel; (2) Count III must be dismissed for failure to plead an actionable § 1983 conspiracy claim based on the dismissal of Counts I and II; and (3) alternatively, all counts against Officer D. Shilling must be dismissed for failure to allege that he was personally involved in any violation of Simpson's constitutional rights.

## A.    *Rooker-Feldman* Doctrine

This court begins by considering its jurisdiction over this action. The State's Attorney defendants argue that this suit is barred under the *Rooker-Feldman* doctrine, which is derived from *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* is a jurisdictional doctrine, *see Durgins* v. *City of E. St. Louis*, 272 F.3d 841, 844 (7th Cir. 2001), so this court considers it first. *See Okoro* v. *Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999) ("Jurisdictional issues should be addressed first and if they are resolved against jurisdiction the case is at an end and there is no occasion to address the merits").

The *Rooker-Feldman* doctrine bars a plaintiff from bringing a § 1983 suit to remedy an injury "inflicted by the state court's decision." *Id.* The alleged source of the injury determines whether the *Rooker-Feldman* doctrine precludes federal jurisdiction. *See id.* The *Rooker-Feldman* doctrine does not apply if a plaintiff claims that the state court failed to rectify an injury caused by some other actor. *Id.* In *Durgins*, the court held that *Rooker-Feldman* did not apply when the plaintiff alleged injury resulting from her employment termination rather than from the state court's failure to order her reinstatement. *Id.*

Simpson does not argue that any injury arose from the state court decision. His Amended Complaint alleges that the harm resulted exclusively from the defendants' violations of Simpson's civil rights. Simpson claims that the defendants conducted or authorized an improper, warrantless arrest, illegal search of his home, and illegal seizure of his property. Because Simpson does not allege injury inflicted by the state court's decision, the *Rooker-Feldman* doctrine is not applicable.

4

## B.    Collateral Estoppel

The Glenwood, State's Attorney and Riverdale defendants challenge Counts I and II under the doctrine of collateral estoppel, which if applicable would also bar Count III. They claim that Counts I and II were decided by the Illinois state court during Simpson's criminal proceedings. Prior to his criminal trial, Simpson filed a motion to quash his arrest and suppress evidence obtained as a result of his arrest. The trial court denied Simpson's motion and found that the search and seizure were proper because Young provided valid consent and the arrest was proper because exigent circumstances existed. The Illinois Supreme Court affirmed the lower court and held that Young's consent to search the apartment was valid and the arrest was proper. *People* v. *Simpson*, 172 Ill. 2d 117, 665 N.E. 2d 1228 (1996). As for the seizure of evidence in the storage locker, the court held that Simpson waived his challenge because he failed to raise it in any of his post-trial motions. *Id.* at 146.

Because "the preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law," *CIGNA Health Care of St. Louis, Inc.* v. *Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002), this court will consider the defendants' argument under the principles of collateral estoppel as articulated by the Illinois Supreme Court. Under Illinois law the "threshold requirements for application of collateral estoppel are (1) that the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) that there was a final judgment on the merits in the prior adjudication; and (3) that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Herzog* v. *Lexington Township*, 167 Ill. 2d 288, 295, 657 N.E. 2d 926, 929-30 (1995). Furthermore, in considering whether the doctrine of collateral estoppel is applicable, this court must also "balance the need to

limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Talarico* v. *Dunlap*, 177 Ill. 2d 185, 192, 685 N.E. 2d 325, 328 (1997).

Simpson concedes that the threshold requirements of collateral estoppel are satisfied in this case. Simpson is raising two constitutional issues that were litigated in his criminal case, the decision by the Illinois Supreme Court was a final judgment, and Simpson was obviously a party to the prior adjudication. *See Simpson*, 172 Ill. 2d 117, 665 N.E. 2d 1228; *People* v. *Simpson*, 204 Ill.2d 536, 792 N.E.2d 265 (2001). It is generally accepted that a criminal conviction collaterally estops a defendant from subsequent civil suits that contest the facts established and the issues decided in the criminal proceeding. *Talarico*, 177 Ill. 2d at 193, 685 N.E. 2d at 328-29.

Simpson, however, contends that collateral estoppel is not applicable to his § 1983 claims because he chose to conduct his criminal proceedings *pro se*. Collateral estoppel does not apply when a party lacked a "full and fair opportunity" to litigate in the previous case. *Allen* v. *McCurry*, 449 U.S. 90, 95 (1980). Simpson argues that he lacked a full and fair opportunity to litigate his criminal case because he did not have the training or experience to represent himself. He points to the requirements for membership in the Illinois Capital Litigation Trial Bar as proof of the fact that he did not have a full and fair opportunity to litigate his case as a *pro se* defendant. He also claims that his mental condition precluded him from receiving a full and fair opportunity to litigate his claims.

To determine whether a party had a full and fair opportunity to litigate his case in the prior action, the "practical realities of litigation" must be considered. *Talarico*, 177 Ill. 2d at 192, 685 N.E.2d at 328. The practical reality of the previous litigation is that Simpson made a

knowing and voluntary decision to waive his right to counsel in his criminal proceedings. *See*

*Simpson*, 172 Ill. 2d at 133-37, 665 N.E. 2d at 1237-39.[2] "To satisfy the 'full and fair

opportunity to litigate' requirement, the prior state proceedings 'need do no more than satisfy the

minimum procedural requirements of the Fourteenth Amendment's Due Process clause.'"

*Guenther* v. *Holmgreen*, 738 F.2d 879, 885 (7th Cir. 1984) (quoting *Kremer* v. *Chem. Constr.

Corp.*, 456 U.S. 461, 485 (1982)).

Nevertheless, Simpson cites several cases which he believes support his view. In *West* v.

*Ruff*, 961 F.2d 1064 (2d Cir. 1992), the court found that collateral estoppel did not apply because

the plaintiff did not have a full and fair opportunity to litigate his civil claim in state court. The

plaintiff in *West* was a *pro se* litigant who only had a single day's notice of his state court trial,

which prevented him from conducting discovery and providing sufficient notice to an eyewitness

he could have called to testify. *Id.* at 1065-66. West's appointed counsel in his parallel federal

case was not notified of the state litigation, and the state court judge was unaware of the potential

availability of appointed counsel. *Id.*

In *Cruz* v. *Root*, 932 F. Supp. 66 (W.D.N.Y. 1996), the court held that the plaintiff did

not have a full and fair opportunity to litigate his civil claim in state court because "his request

---

[2]The Illinois Supreme Court noted that

> The record indicates the defendant was literate, responsive and understanding . . . . He had
> demonstrated a familiarity with the judicial process and, according to the trial judge, had
> waived counsel and represented himself on a prior occasion. Further, defendant filed
> numerous motions and actively presented his defense. He demonstrated, in the words of the
> trial judge, that '[he] knew what he was doing' when he waived his right to counsel and chose
> to represent himself.

*Simpson*, 172 Ill. 2d at 134, 665 N.E. 2d at 1237. This decision by the Illinois Supreme Court was found to be
neither contrary to, nor an unreasonable application of, established Supreme Court precedent in a ruling on
Simpson's petition for a writ of habeas corpus filed before Judge Matthew F. Kennelly. *See United States ex rel.
Simpson* v. *Briley* (Case No. 02 C 3885, docket # 43, February 5, 2004).

for appointed counsel was denied and he was forced to prosecute that action *pro se*." *Id.* at 69. The court expressed concern over the defendant's mental state and the fact that there was evidence to suggest that he was prejudiced by the lack of available appointed counsel. *Id.* at 70. The court also noted that the defendant's status as a *pro se* litigant, in and of itself, was not dispositive. *Id.* at 69.

Simpson also cites *Clarke* v. *Dep't of Corr.*, 564 F. Supp. 787 (S.D.N.Y 1983), where the court found that the plaintiff did not have a full and fair opportunity to litigate his civil claim in state court. The plaintiff, once again a *pro se* litigant, wrote the court and two Legal Aid organizations requesting counsel, but he never received legal assistance. *Id.* at 789. He was left to litigate his claim *pro se*, and he was only notified of his trial date the night before it began. *Id.* He was also extremely ill during his trial. *Id.* The court emphasized the fact that its decision did not rest merely on the fact that the plaintiff proceeded *pro se*. *Id.*

In *Salahuddin* v. *Dalsheim*, No. 94 CIV. 8730, 1996 WL 384898, (S.D.N.Y. 1996), the court held that the plaintiff did not have a full and fair opportunity to litigate his civil claim. The court noted that the plaintiff's "*pro se* status combined with other circumstances" hindered his ability to litigate the primary issue in the case. *Id.* at *8. These other circumstances included that the discovery available to the plaintiff was "severely limited" and that "most importantly" because the plaintiff was a prisoner he was "apparently given little or no chance to prepare for certain proceedings." *Id.* at *8-9.

Finally, Simpson cites *Davis* v. *City of Charleston*, 827 F.2d 371 (8th Cir. 1987), which is the only criminal case to which he points. In *Davis* the court noted, in a footnote and without explanation, that as a *pro se* litigant the plaintiff did not have a full and fair opportunity to litigate

her criminal case. 827 F.2d at 321 n.3. Significant to that case, however, was the fact that the plaintiff had requested that the trial judge appoint counsel for her. *Id.* at 319. That request was denied by the state judge because the plaintiff was only being prosecuted for disturbing the peace, which did not carry a jail sentence and, accordingly, no right to appointed counsel was implicated. *Id.*

None of these cases is persuasive in light of the factual scenario involved in this case. Unlike the plaintiff in *West*, Simpson was not prevented from conducting discovery or providing sufficient notice to his witnesses based on short notice of his trial. Indeed, prior to his criminal trial Simpson was able to file a motion to quash his arrest and suppress evidence obtained as a result of his arrest, which the trial court denied and the Illinois Supreme Court affirmed. *See People* v. *Simpson*, 172 Ill.2d 117, 665 N.E.2d 1228 (1996). Moreover, unlike the plaintiffs in all the above cited cases, Simpson chose to exercise his constitutional right to refuse state-provided counsel and represent himself throughout his criminal proceedings. *Id.* at 574; *see also, Faretta* v. *California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense . . . . The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails"). That element is missing from each of the cases that Simpson cites to and, without anything else to show that he was not provided a full and fair opportunity to litigate his claim, the court finds it dispositive here.

Furthermore, the membership requirements for the Illinois Capital Litigation Trial Bar do not eliminate a defendant's right to litigate *pro se* in his own capital trial. *See Simpson*, 204 Ill.2d at 573-74 ("The new rules do not eradicate [the constitutional right to represent

9

oneself] once a defendant makes a voluntary and intelligent decision to proceed without assistance of counsel"). Exercising the constitutional right to conduct one's case *pro se* does not deprive that defendant of a full and fair opportunity to litigate his criminal proceedings. Admittedly, Simpson's competency to represent himself, including his ability to make technical decisions and navigate the legal system, is distinct from his competency to waive his right to counsel. *See Simpson*, 172 Ill. 2d at 138, 665 N.E.2d at 1239. However, the Illinois Supreme Court found that Simpson made a knowing and voluntary decision to conduct his defense *pro se*, *id.* at 134, and "although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual, which is the lifeblood of the law." *Faretta*, 422 U.S. at 834.

Thus, Simpson's choice to conduct his own defense in his prior criminal proceedings does not exempt his § 1983 claims from the preclusive effect of collateral estoppel. Simpson is estopped from bringing all three Counts.[3]

## CONCLUSION

For the reasons stated above, the Glenwood defendants' [#81], State's Attorney defendants' [#85], and Riverdale defendants' [#83] motions to dismiss are granted. This action is dismissed with prejudice. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 9, 2004

---

[3]Because Simpson is estopped from bringing all three Counts, further challenges to the Amended Complaint are not considered.